UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RYAN ERASMUS, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br>v.<br><br>LEGALZOOM.COM, INC. d/b/a/ LEGALZOOM, and LEGALZOOM, INC.; BUSINESS LICENSES, LLC; and JOHN DOES 1 to 10,<br><br>Defendants. | Civil Action No. 24-7831 (JXN) (MAH)<br><br>OPINION |

**NEALS, District Judge:**

This matter comes before the Court on Defendant LegalZoom.com, Inc. d/b/a LegalZoom's ("Defendant" or "LegalZoom") motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"). (ECF No. 12). Plaintiff Ryan Erasmus ("Plaintiff") opposed. (ECF No. 13). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendant's motion to compel arbitration is **GRANTED**.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff brings this action against LegalZoom, an online company that provides various legal services, including assistance with business formation to aspiring entrepreneurs. (ECF No. 1-1 ¶¶ 1-2). Plaintiff alleges LegalZoom "engaged in the practice of law by providing legal advice and services including preparing and filing legal documents, managing compliance disclosures, and drafting legal documents." (*Id.* at ¶ 19).

On June 1, 2018, Plaintiff purchased the "Express Gold, LLC package" from LegalZoom's website to assist him with preparing and filing several business-related documents and forms, such as articles of organization and annual reports. (*Id.* at ¶¶ 3-4).

LegalZoom's website provides prospective customers with notice that any purchase is subject to LegalZoom's Terms of Service.[1] (Declaration of Ryan Zurowski ("Zurowski Decl."), Exs. C-E, ECF Nos. 12-5, 6, 7). After selecting the "Express Gold, LLC package," and providing the relevant required information, Plaintiff was given the option to complete his order. (Zurowski Decl., Ex. D, ECF No. 12-6). The next online screen presented Plaintiff with LegalZoom's Terms of Service via a hyperlink stating, "By clicking pay, I agree to the Terms of Service, Legal Plan Contract Terms, Subscription Terms, and Registered Agent Terms." (Zurowski Decl., Ex. E, ECF No. 12-7). Prior to completing the transaction Plaintiff needed to click the "Agree and Pay Now" button. (*Id.*).

The Terms of Service stated that Plaintiff:

> **[U]nderst[ood] that these Terms require the use of arbitration on an individual basis to resolve disputes, rather than jury trials or class actions, and also limit the remedies available to me in the event of a dispute as described in the LegalZoom Arbitration Agreement, contained in Paragraph 16 . . . .**

(Zukowski Decl., Ex. A, ECF No. 12-3 (emphasis in original)).

Paragraph 16 is titled "**DISPUTE RESOLUTION BY BINDING ARBITRATION.**" *Id.* (emphasis in original). It begins by instructing readers to "[p]lease read this carefully. It affects your rights." *Id.* Paragraph 16 then provides the following:

> Most customer concerns can be resolved quickly and to the customer's satisfaction by calling our Customer Care Center at (800) 773- 0888. **In the unlikely event that the LegalZoom Customer Care Center is unable to resolve your complaint to your**

---

[1] LegalZoom has written Terms of Use that govern the use of its website and are accessible on its homepage and other pages. The Terms of Use reference LegalZoom's Terms of Service and contain a hyperlink.

2

> satisfaction (or if LegalZoom has not been able to resolve a dispute it has with you after attempting to do so informally), **we each agree to resolve those disputes through binding arbitration or in small claims court rather than in a court of general jurisdiction.** Arbitration is less formal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than a court does, and is subject to very limited review by courts. **Any arbitration under these Terms will take place on an individual basis; class arbitrations and class actions are not permitted** . . . . You may speak with independent counsel before using this Site or completing any purchase.

*Id.* (emphasis in original).

> Subsection (a) of the Arbitration Agreement first addresses scope:
>
> (a) LegalZoom and you agree to arbitrate **all disputes and claims** between us before a single arbitrator. The types of disputes and claims we agree to arbitrate are intended to be broadly interpreted. It applies, without limitation, to:
>
> - claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory;
>
> - claims that arose before these or any prior Terms (including, but not limited to, claims relating to advertising);
>
> - claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and
>
> - claims that may arise after the termination of these Terms.
>
> For the purposes of this Arbitration Agreement, references to "LegalZoom, "you," and "us" include our respective subsidiaries, affiliates, agents, employees, business partners, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or products under these Terms or any prior agreements between us. Beneficiaries include, but are not limited to, those named in an estate planning document.
>
> . . . .
>
> Notwithstanding the foregoing, either party may bring an individual action in small claims court. This arbitration agreement does not

3

>preclude your bringing issues to the attention of federal, state, or local agencies. Such agencies can, if the law allows, seek relief against us on your behalf. **You agree that, by entering into these Terms, you and LegalZoom are each waiving the right to a trial by jury or to participate in a class action.** These Terms evidence a transaction or website use in interstate commerce, and thus the Federal Arbitration Act ("FAA") governs the interpretation and enforcement of this provision. This arbitration provision will survive termination of these Terms.

*Id.* (emphasis in original).

>Subsection (c) states:

>>[T]he arbitration will be governed by the Consumer Arbitration Rules (the "AAA Rules") of the [AAA], as modified by these Terms, and will be administered by the AAA. . . . The arbitrator is bound by these Terms. All issues are for the arbitrator to decide, except that issues relating to the scope, enforceability, and interpretation of the arbitration provision and the scope, enforceability, and interpretation of paragraph (f) are for the court to decide.

*Id.*

>Subsection (f) provides:

>>The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. YOU AND LEGALZOOM AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITIES AND NOT AS PLAINTIFFS OR CLASS MEMBERS IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING OR IN THE CAPACITY OF A PRIVATE ATTORNEY GENERAL. Further, unless both you and LegalZoom agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. The arbitrator may award any relief that a court could award that is individualized to the claimant and would not affect other customers. Neither you nor we may seek non-individualized relief that would affect other customers. If a court decides that applicable law precludes enforcement of any of this paragraph's limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court.

4

*Id.*

On June 3, 2024, Plaintiff filed this putative class action lawsuit in the Superior Court of New Jersey, Law Division, Essex County. (Notice of Removal ¶ 1, ECF No. 1). Plaintiff alleges LegalZoom engaged in the unauthorized practice of law and violated the New Jersey Consumer Fraud Act ("NJCFA"). (ECF No. 1-1 ¶¶ 8, 38, 44-49).

On July 17, 2024, Defendant removed the case to this Court. (*Id.*).

On October 21, 2024, Defendant filed the instant motion. (ECF No. 12). On that same date, Plaintiff opposed, (ECF No. 13), to which Defendant replied. (ECF No. 14). This matter is now ripe for consideration.

## II.      LEGAL STANDARD

"The FAA establishes a strong federal policy in favor of compelling arbitration over litigation." *MZM Constr. Co., Inc. v. N. J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 396 (3d Cir. 2020) (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000)); *see also Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) ("It is well established that the [FAA] reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'") (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) (noting that FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate."); *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 522 (3d Cir. 2009) (same). "The 'saving

clause' in Section 2 indicates that the purpose of Congress 'was to make arbitration agreements as enforceable as other contracts, but not more so.'" *Saleh v. Udemy, Inc.*, No. 23-02207, 2024 WL 1231343, at *2 (D.N.J. Mar. 21, 2024) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). The "unmistakably clear congressional purpose" behind the FAA is "that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint*, 388 U.S. at 404. "Courts, therefore, cannot delve into the merits of an arbitrable dispute; their jurisdiction is limited to staying the civil action and compelling the parties to arbitrate the dispute." *Barrett v. Konica Minolta Executive Severance Plan*, No. 24-05067, 2025 WL 965707, at *2 (D.N.J. March 31, 2025 (citing *John Hancock Mut. Life Ins. v. Olick*, 151 F.3d 132, 136-37 (3d Cir. 1998)).

The FAA "enables judicial enforcement of a contract to arbitrate after the court "hear[s] the parties" and is "satisfied that the making of the agreement for arbitration . . . is not in issue[.]" *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 (3d Cir. 2024) (citing § 4). Thus, "[b]efore compelling arbitration pursuant to the FAA, a court must determine that: '(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement.'" *Dorset v. United Healthcare Servs., Inc.*, 2024 WL 3325977, at *2 (D.N.J. Jul. 8, 2024) (quoting *Kirleis*, 560 F.3d at 160); *see also Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 112 (3d Cir. 2000) (holding that "when the very existence of . . . an [arbitration] agreement is disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists"). When performing this inquiry, the Court applies "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160; *Century Indem. Co.*, 584 F.3d at 524; *see also Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017). "[U]pon being satisfied that the making of the agreement for arbitration or the

6

failure to comply therewith is not in issue," a court must order the parties to proceed with arbitration. 9 U.S.C. § 4. But "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

In determining whether a valid arbitration agreement exists, a court must first determine whether to apply the Rule 12(b)(6) or Rule 56 standard of review. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015); *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771-72 (3d Cir. 2013). The Third Circuit has established a two-tiered framework for assessing motions to compel arbitration. *See Guidotti*, 716 F.3d at 776.

"[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC V. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question'" under a Rule 56 summary judgment standard. *Id.* (quoting *Somerset*, 832 F. Supp. 2d at 776). "In short, discovery addressing a motion to compel arbitration is unnecessary when no factual dispute exists as to the existence or scope of the arbitration agreement." *Young*, 119 F.4th at 320.

7

"An arbitration clause may be deemed 'apparent' even when a 'contract[ ], though not appended to the Complaint, [is] integral to, and referenced in, the Complaint.'" *Lawson v. City of Philadelphia*, 2019 WL 934976, at *2 (E.D. Pa. Feb. 25, 2019) (quoting *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (alterations in original)); *see also Westerkamp v. Samsung Elecs. Am., Inc.*, No. 21-15639, 2023 WL 4172967, at *4 (D.N.J. June 26, 2023). Consequently, if an arbitration clause "appears in a contract relied upon in the Complaint" the Court may "resolve the motion to compel arbitration under a motion to dismiss standard[.]" *Sanford*, 618 F. App'x at 117-18.

### III. DISCUSSION

#### A. The 12(b)(6) Standard is Proper

As a threshold matter, the Rule 12(b)(6) standard is appropriate.[2]

LegalZoom's agreement is integral to and referenced by Plaintiff in his Complaint. (*See* ECF No. 1-1 ¶¶ 18, 19 "LegalZoom has entered into agreements for the provision of services that include legal services to [Plaintiff] and others . . . Pursuant to LegalZoom's agreement with [Plaintiff] . . . ."). Additionally, Plaintiff specifically alleges that "Defendant's agreement to provide legal services to Plaintiff and others constitutes the unauthorized practice of law and is an unconscionable commercial practice and otherwise violates the [NJCFA]." (*Id.* at ¶ 38). Plaintiff's claims are based on his agreement with LegalZoom. In sum, "no factual dispute exists as to the existence or scope of the arbitration agreement." *Young*, 119 F.4th at 320. Thus, the 12(b)(6) standard is appropriate. See *Westerkamp*, 2023 WL 4172967, at *4 ("[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited.") (*Lloyd v. Retail Equation*, Inc., No. 21-17057, 2022 WL

---

[2] LegalZoom argues the 12(b)(6) standard is applicable. (Def.'s Br. at 13-14). Plaintiff does not state a position as to which standard is proper here. (*See generally* Pl.'s Br.).

8

18024204, at *7 (D.N.J. Dec. 29, 2022)); *id.* (applying Rule 12(b)(6) standard because "[a]lthough Plaintiff's Complaint does not attach the language of the arbitration agreement or the Limited Warranty, it repeatedly references the Limited Warranty upon which at least a portion of Plaintiff's [NJCFA] claim is based."); *Saleh*, 2024 WL 1231343, at *2 (finding motion to dismiss standard applicable where "a contract is integral to Saleh's allegations . . . ."); *see also Sorathia v. Fidato Partners, LLC*, 2020 WL 5121473, at *3 (E.D. Pa. Aug. 31, 2020) ("Precluding review of a complaint under the Rule 12(b)(6) standard simply because a plaintiff has avoided reference to an existing arbitration agreement would frustrate the purpose of the FAA: to facilitate expedited resolution of disputes where the parties to a contract have opted for arbitration."); *Singh v. Uber Technologies Inc.*, 939 F.3d 210, 218 (3d Cir. 2019) ("The centerpiece of [*Guidotti's*] framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents").

### B. The Arbitration Agreement is Valid and Enforceable[3]

"The question of whether the parties agreed to arbitrate is governed by state law principles regarding formation of contracts." *Hite v. Lush Internet Inc.*, 244 F. Supp. 3d 444, 450 (D.N.J. 2017). "An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 949 (2020) (citing

---

[3] Plaintiff did not address or oppose Defendants' assertions that Plaintiff manifested his assent to the Terms of Service and Arbitration Agreement by agreeing to proceed with the transaction; that the Terms of Service and Arbitration Agreement clearly and unambiguously explain that arbitration is an alternative to proceeding with a lawsuit in court; or that Plaintiff's claims are within the scope of the Arbitration Agreement. (*See generally* Pl.'s Br.). As such, Plaintiff has waived argument on those issues. *See Woodell v. Coach*, No. 22-2222, 2022 WL 17486262, at *3 (D.N.J. Dec. 7, 2022) ("As [plaintiff] does not address these arguments in his opposition brief, any arguments in opposition are deemed waived."); *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Becton, Dickinson & Co.*, No. 14-4318, 2024 WL 4184487, at *9 (D.N.J. Sept. 5, 2024) ("Where a party fails to 'respond to . . . arguments on [certain] claims or mention them at all in [their] brief,' those claims are waived." (quoting *Yucis v. Sears Outlet Stores, LLC*, No. 18-15842, 2019 WL 2511536, at *4, n.4 (D.N.J. June 18, 2019))); *Powell v. Verizon*, No. 19-8418, 2019 WL 4597575, at *9 (D.N.J. Sept. 20, 2019) ("A plaintiff concedes a claim when she fails to oppose arguments in support of a motion to dismiss it under Fed. R. Civ. P. 12(b)(6).").

*Atalese v. U.S. Legal Servs. Grp., LP*, 99 A.3d 306, 313 (2014)). "Thus, there must be a meeting of the minds for an agreement to exist before enforcement is considered." *Id.* (cleaned up).

However, "[a]n arbitration provision is not enforceable unless the consumer has reasonable notice of its existence." *Santana v. SmileDirectClub, LLC*, 292 A.3d 529, 533 (N.J. Super. Ct. App. Div. 2023) (citations omitted). "But a party may not claim lack of notice of the terms of an arbitration provision for failure to read it." *Id.* "[A]s a general rule, 'one who does not choose to read a contract before signing it cannot later relieve himself of its burdens.'" *Id.* (citing *Skuse*, 236 A.3d at 952).

"Consumer web-based contracts are no longer a novel concept. Indeed, New Jersey courts have recognized the validity of such contracts for decades." *Santana*, 292 A.3d at 533 (quoting *Wollen v. Gulf Stream Restoration & Cleaning, LLC*, 259 A.3d 867 (N.J. Super. Ct. App. Div. 2021)). "Contracts that require 'that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction' are sometimes called 'clickwrap' agreements." *Id.* (citing *Skuse*, 236 A.3d at 955 n.2 (quoting *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007))). "Such agreements are 'routinely enforced by the courts.'" *Id.* (internal citation omitted). "In the context of clickwrap agreements, '[w]here there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms.'" *Santana*, 292 A.3d at 535 (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). "[C]ourts have generally found clickwrap agreements enforceable because '[b]y requiring a physical manifestation of assent, a user is said to be put on inquiry notice of the terms assented to.'" *Id.* (alterations in original) (quoting *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 465 (S.D.N.Y. 2017)).

### i. Plaintiff was Provided Reasonable Notice of the Terms of Service

Here, Plaintiff's purchase of LegalZoom's services was pursuant to a "clickwrap" agreement. He was required to assent to the Terms of Service by clicking "Agree and Pay Now[,]" which confirmed that he "agree[d] to the Terms of Service" before proceeding with the transaction. (Zurowski Decl., Ex. E, ECF No. 12-7). The Terms of Service hyperlink is presented in a clear font and located conspicuously directly above the "Agree and Pay Now" button on the screen. *Id.*; *Lloyd*, 2022 WL 18024204 at *10. The immediate proximity of the large green "Agree and Pay Now" button, coupled with the textual notification and hyperlink to the Terms of Service, were, in each case, "enough to place a reasonably prudent user on notice." *Lloyd*, 2022 WL 18024204 at *10. "This combination of clarity and conspicuousness, along with a plain textual notification that [Plaintiff] was agreeing to the Terms [of Service] by . . . checking out, meets the *Lloyd* standard." *Saleh*, 2024 WL 1231343, at *3. Thus, Plaintiff had reasonable notice that he was agreeing to LegalZoom's Terms of Service, which undisputedly included the Arbitration Agreement. (Zurowski Decl., Ex. A, ECF No. 12-3; *see generally*, Pl.'s Br.).[4] *Saleh*, 2024 WL 1231343, at *3; *Lloyd*, 2022 WL 18024204 at *10; *Santana*, 292 A.3d at 536-37.

### ii. The Parties' Agreement to Arbitrate was Mutually Assented To

New Jersey courts have characterized arbitration agreements as "waiver-of-rights" provisions that, to be effective, require that the waiver of the right at issue to "be clearly and unmistakably established." *Atalese*, 99 A.3d at 316. Consequently, in order to be enforceable under New Jersey law an arbitration clause, "at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." *Id.* at 315.

---

[4] Plaintiff does not offer any evidence of failure on his part to receive, view, understand, and assent to the Terms of Service or the arbitration agreement they contain. *See Lloyd*, 2022 WL 18024204 at *7.

11

Here, LegalZoom's Arbitration Agreement adequately explained to Plaintiff he was giving up his right to bring claims in court or have a jury resolve the dispute. (*See* Zukowski Decl., Ex. A ¶ 3, ECF No. 12-3 ("**I understand that these Terms require the use of arbitration on an individual basis to resolve disputes, rather than jury trials or class actions, and also limit the remedies available to me in the event of a dispute as described in the LegalZoom Arbitration Agreement, contained in Paragraph 16 . . . .**") (emphasis in the original); *id.* ¶ 16 "[W]e each agree to resolve those disputes through binding arbitration or in small claims court rather than in a court of general jurisdiction."); *id.* ("LegalZoom and you agree to arbitrate **all disputes and claims** between us before a single arbitrator . . . . **You agree that, by entering into these Terms, you and LegalZoom are each waiving the right to a trial by jury or to participate in a class action.**") (emphasis in the original). *See Skuse*, 236 A.3d at 951.

### C. Plaintiff's Claims Are Within the Scope of the Arbitration Agreement

"When it comes to ascertaining the scope of an arbitration provision, New Jersey '[c]ourts have generally read the terms "arising out of" or "relating to" [in] a contract as indicative of an "extremely broad" agreement to arbitrate any dispute relating in any way to the contract.'" *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 523 (3d Cir. 2019) (alterations in original) (quoting *Curtis v. Cellco P'ship*, 992 A.2d 795, 802 (N.J. Super. Ct. App. Div. 2010). "Such broad clauses have been construed to require arbitration of any dispute between the contracting parties that is connected in any way with their contract." *Id.* (quoting *Curtis*, 992 A.2d at 802).

Plaintiff's claims are within LegalZoom's Arbitration Agreement. The LegalZoom Arbitration Agreement provides that the parties "agree to arbitrate **all disputes and claims** between [them] before a single arbitrator," including "claims arising out of or relating to any aspect

of the relationship between [them], whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory[.]" (*See* Zukowski Decl., Ex. A ¶ 16(a), ECF No. 12-3) (emphasis in the original). Moreover, Plaintiff's statutory NJCFA and unauthorized practice of law fraud claims are connected to the parties' agreement and LegalZoom's Terms of Service. *See, e.g., In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d at 524 ("New Jersey courts have interpreted the term 'relating to' in the arbitration clause context to be extremely broad, which we understand to mean . . . that a claim need only have some logical or causal connection to the agreement to be related to it" (cleaned up)).

### i. The LegalZoom Arbitration Agreement Contains a Valid Class Action Waiver

Under the FAA, "arbitrators wield only the authority they are given. That is, they derive their 'powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.'" *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)). Similarly, the Court's task is "to give effect to the intent of the parties." *Id.* (quoting *Stolt-Nielsen*, 559 U.S. at 684). The Supreme Court has consistently reiterated that there is a "'fundamental' difference between class arbitration and the individualized form of arbitration envisioned by the FAA." *Id.* (quoting *Epic Systems Corporation v. Lewis*, 584 U.S. 497, 507-08 (2018)). The Supreme Court's "precedent clearly teaches that a contract defense 'conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures' is inconsistent with the [FAA] and its saving clause." *Epic Systems*, 584 U.S. at 522 (citation omitted).

LegalZoom's Arbitration Agreement repeatedly provides that arbitration must be on an individualized basis. (Zukowski Decl., Ex. A ¶ 16, ECF No. 12-3 (stating that "Plaintiff **"understands that these Terms require the use of arbitration on an individual basis to resolve**

disputes, rather than jury trials or class actions"); *id.* ("**Any arbitration under these Terms will take place on an individual basis; class arbitrations and class actions are not permitted . . . .**"); *id.* ("**You agree that, by entering into these Terms, you and LegalZoom are each waiving the right to a trial by jury or to participate in a class action.**") (all emphasis in the original). Consequently, the Court enforces the unambiguous class action waiver contained within the Arbitration Agreement.

### D. <u>Plaintiff's Fiduciary Duty and Public Policy Arguments Lack Merit</u>

#### i. LegalZoom's Terms of Use and Terms of Service Preclude Plaintiff's Fiduciary Duty Argument

Plaintiff extensively argues that LegalZoom—by engaging in the unauthorized practice of law—owed Plaintiff a fiduciary duty, and therefore, LegalZoom had an obligation to explain the arbitration clause to Plaintiff. (Pl.'s Br. at 4-12). This argument is contradicted, however, by LegalZoom's Terms of Service, which includes a disclaimer "**that LegalZoom is not a law firm or an attorney, may not perform services performed by an attorney, and its forms or templates are not a substitute for the advice or services of an attorney[]**" and further explicitly states "**[n]o attorney-client relationship or privilege is created with LegalZoom.**" *Id.* (emphasis in original). (Zukowski Decl., Ex. A ¶ 1, ECF No. 12-3). Moreover, by proceeding with the transaction, Plaintiff confirmed that he did not "believe that LegalZoom gave [him] any legal advice, opinion or recommendation about [his] legal rights, remedies, defenses, options, selection of forms or strategies." (*Id.* ¶ 2). Further, LegalZoom's Terms of Use states "LegalZoom is not a law firm and may not perform services performed by an attorney. LegalZoom, its Services, and its forms or templates are not a substitute for the advice or services of an attorney." (Zukowski Decl., Ex. F, ECF No. 12-8). Indeed, the core of Plaintiff's claims is that LegalZoom is *not* an attorney or law firm which further contradicts LegalZoom owed Plaintiff a fiduciary duty. (ECF No. 1-1 ¶

21 ("LegalZoom has no right to provide legal services as a corporation or limited"); Pl.'s Br. at 2, 6, 8).

Plaintiff's fiduciary duty argument has been rejected by other courts when compelling arbitration. *See LegalZoom.com, Inc. v. McIllwain*, 429 S.W.3d 261, 265 (Ark. 2013) (holding that "the allegation that LegalZoom.com engaged in the unauthorized practice of law in Arkansas did not directly affect the validity of the arbitration clause"); *Bergenstock v. LegalZoom.com, Inc.*, No. 13-15686, 2015 WL 3866703, at *5-7 (N.C. Super. June 23, 2015) (holding that unauthorized practice of law claim was subject to arbitration).

Thus, Plaintiff's fiduciary argument does not alter the "general rule" that "one who does not choose to read a contract before signing it cannot later relieve himself of its burdens." *See Skuse*, 236 A.3d at 952; *see also Goffe v. Foulke Mgmt. Corp.*, 208 A.3d 859, 873 (N.J. 2019) ("[T]he argument that . . . plaintiff did not understand the import of the arbitration agreement and did not have it explained to [him] by the [defendant] is simply inadequate to avoid enforcement of [a] clear and conspicuous arbitration agreement . . . .").

### ii. LegalZoom's Arbitration Agreement is Not Against Public Policy

Plaintiff argues LegalZoom's Arbitration Agreement is against public policy and that the corresponding policy goals of the NJCFA should further preclude the adjudication of Plaintiff's claims by an arbitrator. (Pl.'s Br. at 12-14). This argument has been similarly rejected. *See Curtis*, 992 A.2d at 801 ("[I]t is well-established that [NJ]CFA claims may be the subject of arbitration and need not be exclusively presented in a judicial forum."); *Pace v. Hamilton Cove*, 317 A.3d 477, 481 (N.J. 2024) (enforcing class action waiver that was not contained in mandatory arbitration clause in action alleging violations of the CFA).

Accordingly, the parties entered into a valid enforceable agreement that provides for arbitration, Plaintiff's claims are within the scope of that agreement, and the waiver on class actions and class arbitrations contained therein is enforceable.

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Accordingly, the Court stays the proceeding pending arbitration.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's motion to compel arbitration (ECF No. 12) is **GRANTED**. An appropriate Order accompanies this Opinion.

DATED: April 15, 2025

JULIEN XAVIER NEALS
United States District Judge